UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID JOSEPH PEDERSEN and
HOLLY ANN GRIGSBY;

    Defendants.

Case No. 3:12-cr-00431-HA

OPINION AND ORDER

HAGGERTY, District Judge:

    Defendants David Joseph Pedersen (Pedersen) and Holly Ann Grigsby (Grigsby) are charged in a fifteen count indictment. Defendants are charged in Count One with Racketeering, in violation of 18 U.S.C. § 1962(c); in Count Two with participating in a Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy, in violation of 18 U.S.C. § 1962(d); and the remaining thirteen counts relate to acts of violence, use and possession of firearms, and other

PAGE 1 - OPINION AND ORDER

criminal activity alleged to have been committed during a nine-day period in Washington, Oregon, and California, from September 26, 2011 through October 5, 2011. The indictment in this case includes a Notice of Special Findings regarding five counts that could form the basis for a death penalty prosecution. Counts Three, Five, and Twelve charge defendants with using/carrying a firearm in relation to crimes of violence causing death, in violation of 18 U.S.C. §§ 924(c), 924(j)(1) and 2. Count Four charges the defendants with kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and (2); and Count Eleven charges defendants with carjacking resulting in death, in violation of 18 U.S.C. §§ 2119(2) and (3). Pedersen has filed a Motion to Compel Discovery [73] in which Grigsby joins [75]. Oral argument was held on May 2, 2013. For the following reasons, the Motion to Compel Discovery is granted.

**DISCUSSION**

The indictment in this case was entered on August 16, 2012. At this time, the parties have been engaged in extensive discovery and investigation. The government is currently considering whether to seek the death penalty against each defendant. The deliberative process by which the government makes that determination is known as the Death Penalty Protocol (DPP) and it is governed by guidelines in the U.S. Attorney's Manual (USAM). Pursuant to the DPP, the United States Attorney for the District of Oregon submits a death penalty evaluation form and memorandum to the Attorney General of the United States setting forth the United States Attorney's recommendations regarding the propriety of the death penalty in this case. The USAM provides that the United States Attorney "shall give counsel for the defendant a reasonable opportunity to present any facts, including mitigating factors, for the consideration of the United States Attorney." USAM § 9-10.050. The mitigation materials submitted by defense

PAGE 2 - OPINION AND ORDER

counsel are included in the Unite States Attorney's submission to the Attorney General. USAM § 9-10.080.

The materials submitted by the United States Attorney are then reviewed by the Attorney General's Review Committee on Capital Cases, and if the United States Attorney recommends pursuit of the death penalty or a member of the committee requests a conference, defense counsel have the opportunity to "present evidence and argument in mitigation." USAM § 9-10.120. The conference with the Capital Review Committee, if any, will be held on August 19, 2013.

This court previously ordered [37] that all discovery, except discovery generated as a result of ongoing investigations, be produced to defendants by February 1, 2013. When the government had difficulty meeting that deadline due to difficulties in procuring discovery from third parties, the court modified that order and required all discovery, except discovery generated as a result of ongoing investigations, to be produced by March 3, 2013. Defendants now request the production of discovery related to three individuals alleged to be associates of the racketeering enterprise: Corey Wyatt, Kimberly Scott Wyatt, and Bryce Woods.[1] Though some discovery regarding these unindicted individuals has been provided to defendants, the government, citing its ongoing investigation, refuses to produce additional statements and materials related to the three individuals. The government contends that it is under no obligation to provide pre-death penalty discovery to defendants and that the requested material is not directly relevant to the five counts included in the Notice of Special Findings, but only to Counts One and Two.

---

[1] These three individuals are represented by counsel and, if they are not aware that they are targets of an ongoing investigation, their attorneys certainly are.

PAGE 3 - OPINION AND ORDER

Federal Rule of Criminal Procedure 16 provides for discovery to defendants in criminal matters. Subsection (a)(1)(E) provides that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case–in–chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Additionally, a prosecutor is required to produce any "evidence favorable to the accused" that is "material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In a capital case, evidence material to punishment is construed very broadly and includes a wide range of evidence about the criminal conduct at issue, other defendants, and the defendant's characteristics and background. 18 U.S.C. § 3592(a).

Though the government has not yet made a determination that it will ultimately seek the death penalty with respect to either defendant, both defendants stand accused of capital crimes and face a possible sentence of death. As such, they are afforded rights and benefits atypical of a defendant charged with crimes punishable by fines and imprisonment. *See, e.g.*, 18 U.S.C. § 3005 (providing for at least two defense counsel, one learned in the law applicable to capital cases). Because a sentence of death is possible for each defendant, the court proceeds as if these are capital cases, and works to ensure that defendants are provided with a defense that is commensurate with the magnitude of the crimes charged and punishments possible. *United States v. Perez*, 222 F. Supp. 2d 164, 169-70 (D. Conn. 2002) (holding that proceedings are

PAGE 4 - OPINION AND ORDER

capital until the government indicates it that will not seek the death penalty).

The government argues persuasively that the DPP does not create any legally enforceable rights, and that the government's *Brady* obligations do not attach until the disclosure of such evidence is required for trial preparations. *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (noting that the USAM does not create any substantive or procedural rights); *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (discussing disclosure of exculpatory evidence and noting that the disclosure of such information is a trial right). While the DPP does not create any rights enforceable by defendants, given the magnitude, complexity, and stakes involved in this case, the court is not entirely convinced that *Brady* disclosures are not required at this time. Defense counsel's preparations for the Capital Case Committee are necessarily also preparations for trial, should there be one. In a case of this size, preparation for trial takes months of full-time work and defense counsel have neither the time nor resources to repeat their efforts because their first attempts were hindered by withheld evidence.[2]

The government may be correct that this court is not required to compel production of the requested discovery at this stage in the litigation, but the government is incorrect in arguing that this court may not enter an order compelling the production of the requested discovery. As numerous courts have held, a district court has broad discretion in ordering pre-death penalty authorization discovery. *See, e.g., United States v. Delatorre*, 438 F. Supp. 2d 892 (N.D. Ill. 2006); *United States v. Diaz*, No. 05-0167 WHA, 2005 WL 1575191 (N.D. Cal. June 30, 2005);

---

[2] This issue is especially important at present given Congress's unwillingness to spare Federal Public Defender and Criminal Justice Act funding from sequestration's budget cuts. Those cuts, as applied to criminal defense for indigent individuals, threaten the administration of justice in this court.

PAGE 5 - OPINION AND ORDER

*Perez*, 222 F. Supp. 2d 164; *United States v. Feliciano*, 998 F. Supp. 166 (D. Conn. 1998). The discovery requirements contained in Rule 16 set a floor, not a ceiling on the government's discovery obligations. Advisory Comm. Note to Fed. R. Crim. P. 16 (Rule 16 "is intended to prescribe the minimum amount of discovery to which the parties are entitled" and "is not intended to limit the judge's discretion to order broader discovery in appropriate cases"). As noted above, the court has broad discretion to manage cases pending before it. Fed. R. Crim. P. 57(b) ("[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district"); *United States v. Ray*, 375 F.3d 980, 993 (9th Cir. 2004) (court's inherent powers to regulate practice before them have been recognized by Congress in Rule 57(b)); *United States v. Salyer*, 271 F.R.D. 148, 153 (E.D. Cal. 2010) (court may exercise discretion to manage production of discovery).

Contrary to the government's assertions, the court has discretion to order the production of the requested discovery. The question is whether it should. The government contends that the production of the requested information would jeopardize its ongoing investigation.[3] As a primary matter, the court notes that it was the government's choice when and if to bring this Indictment. The government apparently chose to do so long before their investigation was complete and at a time that both named defendants were at little risk of slipping away.[4] As

---

[3] The government has repeatedly noted that this court previously ruled that discovery produced from ongoing investigations need not have been produced by a date certain. By issuing such a ruling, the court did not intend to allow the government to withhold such discovery after it had been obtained, but merely recognized the reality that the government could not produce that which it did yet have.

[4] Pedersen had already pleaded guilty to two counts of murder in Washington, and had been sentenced to life without the possibility of parole. Grigsby was in custody and had been charged in Washington for the same two homicides, and though her case had not been disposed

discussed above, a defendant indicted in a capital case has broad due process rights and those rights attach with the issuance of the indictment. Additionally, the court cannot see how the production of this evidence will jeopardize an ongoing investigation. The discovery relates to three individuals who are represented by counsel and who have been contacted and interviewed by the government. The disclosure of their statements and the reports regarding their activities to the named defendants will not tip them off to anything they do not already know. The government's concerns regarding the safety of witnesses and the integrity of their investigation are legitimate. However, there is already a protective order in this case and defense counsel have offered to afford additional protections to the discovery at issue. The court sees no risk in providing the evidence to defense counsel with the understanding that it only be seen by members of the defense team.

The government also argues that defense counsel do not need the information requested as it is not directly tied to the counts listed in the Notice of Special Findings and is not relevant to their arguments before the Capital Case Committee. That argument is belied by the Indictment itself, in which a relatively broad conspiracy is alleged and incorporated into Count Three, and by the USAM's broad guidelines on what factors should be considered by the Capital Case Committee in determining whether pursuit of the death penalty is appropriate. USAM § 9-10.090. More importantly, it is not the government's place to make strategic decisions for defense counsel. The court concludes that the interests of justice and the interests of defendants in the provision of the requested discovery outweigh the government's interests in maintaining its secrecy.

---

of, based on this court's experience, she was at little risk of imminent release.

PAGE 7 - OPINION AND ORDER

Additionally, issues of timing and case management militate in favor of compelling production. If the government decides to pursue the death penalty with respect to either defendant, the court expects to be advised of that fact on or about November 12, 2013. At that time, over two years will have passed from the dates of the alleged crimes and fifteen months from the date of the Indictment. While this case has been declared "complex" pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii), and the speedy trial clock has been stopped pursuant to the factors set forth in sections 3161(h)(7)(B)(i) and (ii), the parties should be mindful of the perils caused by such lengthy delays. An "ends of justice" continuance attendant with the designation of a case as being "complex" does not exempt an "entire case from the requirements of the Speedy Trial Act altogether, and open the door for wholly unnecessary delays in contravention of the Act's purpose." *United States v. Jordan*, 915 F.2d 563, 565-66 (9th Cir. 1990).

The burden of ensuring that the dictates of the Speedy Trial Act are met is not the court's alone, but is shared by the government. *Id.* at 566. The court expects the parties to be ready to set a firm trial date as soon as a decision is reached by the Attorney General. This court has broad discretion "as an aspect of its inherent right and duty to manage its own calendar" and may use that power to ensure that the ends of justice are met. *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978). Additional time for the production and review of withheld discovery and a possible return to the Capital Case Committee based on that additional discovery would be manifestly unfair to the parties and the public, and would constitute an intolerable waste of scarce resources and time.

////

////

PAGE 8 - OPINION AND ORDER

**CONCLUSION**

For the reasons provided, defendant's Motion to Compel Discovery [73] is GRANTED. The parties shall confer regarding an appropriate protective order, and if necessary, shall contact the court to resolve any disputes regarding the terms of such an order. Defendants shall notify the court by May 6, 2013 regarding whether the parties have agreed to a protective order. A hearing will be scheduled forthwith if the parties are unable to reach agreement. The court expects the government to produce the requested discovery by May 15, 2013.

IT IS SO ORDERED.

Dated this 2 day of May, 2013.

_____
ANCER L. HAGGERTY
United States District Judge