S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**SCOTT ERIK ASPHAUG, OSB #83367**
Assistant United States Attorney
Scott.Asphaug@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 717-1117
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:12-CR-00431-HA |
| v. | GOVERNMENT'S EMERGENCY MOTION FOR STAY OF SEALED |
| DAVID JOSEPH PEDERSEN and HOLLY ANN GRIGSBY, | ORDER, RETURN OF MIRROR IMAGES, AND FOR DISCLOSURE OF COMMUNICATIONS WITH OREGON |
| Defendants. | DEPARTMENT OF JUSTICE |

**FILED UNDER SEAL**

The United States of America, by and through S. Amanda Marshall, United States Attorney for the District of Oregon, and Scott Erik Asphaug, Assistant United States Attorney, respectfully submits this Emergency Motion for a Stay of the Court's Sealed Order of November 19, 2013 (ECF 293), Return of Mirror Images, and for the Disclosure to the Government of all Communications Between the Court and the Oregon Department of Justice that relate to the Sealed Order.

On November 27, 2013, the government learned that computers and other electronic components used by OSP members of the federal prosecution team were removed from their work area for the purpose of imaging the hard drives. Since that time, and in response to the Government's Emergency Motion for Disclosure or Clarification of Court's Order (ECF 307), the Court provided a copy of its Sealed Order dated November 19, 2013, to the parties. That Order directed the Oregon Department of Justice (ODOJ) to seize OSP computers containing property of the United States, and ordered a forensic examination to determine whether the computers contained evidence of accessing privileged material. The Order left to the discretion of ODOJ the manner and method of the forensic examination. ODOJ was prohibited from communicating regarding the terms of the order with anyone, presumably including the United States. Finally, ODOJ was ordered to report their findings, in camera and ex parte, to the Court.

The United States has substantial objections to the court's Order and the process by which it was issued. It seeks a stay of the Court's ruling, an immediate return of the mirror images, and further information about what led to the ruling, so that it may make deliberate consideration of its legal course of action. The United States has a number of legitimate bases to object to the Court's order, including the following:

1. OSP is not an independent party before this court. Rather, it is a member of the prosecution team. As such, it is before this court as an agent of the United States. The Government is not aware of any authority which permits the court to independently and ex parte contact, obtain information from, and issue orders to a segment of the prosecution team. Certainly, Rule 16 does not authorize such actions, and the Government is unaware of any Court that has ever undertaken such drastic actions. *See United States v. Gatto*, 763 F.2d 1040, 1045 (9th Cir. 1985) (reversing district court's suppression order because it exceeded authority under

**Government's Emergency Motion for Stay of Sealed Order, Return of Mirror**       Page 2
**Images, and for Disclosure of Communications with Oregon Department of**
**Justice (UNDER SEAL)**

Rule 16). The computers seized and copied by the state of Oregon contain material privileged under Fed. R. Crim. P. 16(a)(2), as well as material and sensitive law enforcement information about other, unrelated cases. (See Asphaug Aff.). The government has not, and does not waive its privilege of confidentiality regarding any of this information and seeks the return of any copies made to protect that privilege and the integrity of its ongoing investigations. The Government's position is that the court was without legal or factual basis to proceed in the manner it did.

2. ODOJ does not represent the interests of the United States in this action. While the Government previously suggested that ODOJ should be incorporated into any discussion of seizing State computers, that was because the State has a property interest in its computers, and privilege issues regarding the contents of those computers unrelated to this case. ODOJ does not have authority to agree to or cooperate with a court request or order respecting the interests of the United States in this case. They are not the possessors of any attorney-client or work product privileges, are not involved in the filter team process, and are not aware of other legal issues which may be presented by the court's request. If ODOJ complies with the court's order they may well violate Oregon ethics rules, and we have advised ODOJ that the Government objects to their compliance. The court lacked authority to affect the interests of the United States, by circumventing the United States, contacting a third party, and ordering that third party to disclose materials in the control of the United States and its agencies.

3. The Government objects to the process by which the court arrived at its order. According to an email from court staff, the court engaged in email communications with ODOJ. The email declined to disclose those communications to the United States. We respectfully request full disclosure. As it stands, the court apparently has engaged in an ex parte fact-finding

mission, the scope and results of which are unknown to the United States. Also unclear is whether the court made any findings of fact to support its extraordinary action. Finally, the nature and scope of the intrusion into records of the United States which the court has authorized is unclear and lacking in any of the particularity requirements normally attendant to computer searches. This was improper, and the government is entitled to full disclosure of what has happened so that it may protect its interests and seek appropriate relief.

4. These concerns are compounded by the fact that the court apparently ordered ODOJ not to communicate about its process with any third party. This has been interpreted by ODOJ to mean that it cannot communicate about what it is doing respecting the interests of or the information in the control of the United States. The result of this is that the Government does not know what forensic procedures have taken place, what steps have been taken to maintain the integrity of Government information, what forensic analyses are to occur, or what reports are to be made to the court. The Government is thus prevented from protecting the integrity of and confidentiality of its information. There is no basis for the Court to deprive a party to litigation of information about the basis for a court order, or how that order will affect the substantial rights of that party.

5. The court's seizure and search stand in stark contrast to the protocols that the government must follow to seize and search computers suspected of containing evidence of criminal conduct. In the normal course, the government submits a detailed affidavit, setting forth specific facts that give rise to probable cause to believe that the computer will contain evidence of criminal activity. *See generally* Fed. R. Crim. P. 41. That affidavit must describe the items to be seized and the contents to be searched with particularity. *Id.* And the affidavit must be made "under oath," to verify accuracy, and to hold the affiant accountable for any false statements. A

neutral magistrate reviews the affidavit to determine if the requirements are met, and if so, Rule 41 spells out the procedures that must be followed for execution and return. The defendant receives a copy of the warrant, and he has all of the relevant information to challenge the warrant if he so chooses. The government has received none of these procedural protections.

6. The Government is particularly concerned about the timing and context of the court's order. The Government has been diligently addressing any and all concerns about intrusion into defendant's privileged communications through Taint Team #2. That effort continues and was underway at the time of the court's order. On November 8, 2013, defendant Pedersen filed an Emergency Motion for Order to Protect Confidentiality of Attorney-Client Communications (ECF 279). As part of that motion, the defendant moved for an Order directing the Oregon State Police to deliver to the Court all electronic storage devices that were ever used to access any privileged recordings and to allow defense counsel to arrange for a forensic examination of the devices. The government, through filter team #2, objected to the emergency motion. This Court denied that motion on November 13, 2013 (ECF 291) but directed government's filter team #2 to report on the concerns raised in that motion. Without further motion or input from the parties, the court then on November 19, 2013 issued its sealed order, essentially granting the relief sought by the defense, yet it did so ex parte and in secret.

On November 26, filter team #2 filed their report in conformance with the Court's Order. In its Filter Team Report, the Government addressed in detail the procedures used by the law enforcement members of the filter team and the prosecution team in response to receiving jail recording CDs from Multnomah County. Indeed, that filing answered the very questions which the Court identifies as motivating its ruling. The court sought information regarding whether OSP Detective David Steele and Analyst Janine Hackett had "accessed or listened to" privileged

**Government's Emergency Motion for Stay of Sealed Order, Return of Mirror**           Page 5
**Images, and for Disclosure of Communications with Oregon Department of**
**Justice (UNDER SEAL)**

materials. Hackett is identified in the Government's report as a member of the filter process. Her job was to separate out privileged calls from non-privileged calls so that they could be separately burned to CDs and produced. The Government acknowledged that as part of that process she "listened to each call long enough to confirm whether the call was legal or non-legal call." Thus, it was her role as part of protecting defendant's privilege to "access" and "listen to" a small portion of privileged calls, and assure that privileged material did not reach the prosecution team. The necessity of conducting this sort of screening process is precisely why a filter team was instituted. Moreover, once her task was completed, Ms. Hackett deleted the audio files from her computer as a further step to prevent unintended or unauthorized disclosure. Detective Steele acknowledges making requests of local institution for "jail calls," but he did not listen to any privileged material. The documentary evidence submitted to the court, including those emails by Detective Steele that are currently recoverable, clearly request only non-privileged calls. Detective Steele sought to obtain additional email documentation but he had deleted his personal files, and the Government represented that OSP does not archive such emails.

The Government's filing fully addressed the court's concerns. Absent clear evidence that the government has *not* properly discharged its duties, the United States is entitled to a presumption that it has properly discharged its duties. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Thus, the court's initial ruling that any seizure of material from OSP computers should await the filter team's report was correct. The court's unilateral communications with and order to ODOJ were both unnecessary and improper. If questions or issues remain following the filter team report, the court has the power to set an evidentiary hearing, request further briefing, or otherwise follow normal litigation procedures. As it has throughout, the Government

Government's Emergency Motion for Stay of Sealed Order, Return of Mirror        Page 6
Images, and for Disclosure of Communications with Oregon Department of
Justice (UNDER SEAL)

will endeavor to promptly and fully address any such concerns within the bounds of discovery rules and procedures, while also seeking to protect legitimate Government interests.

7. The court's order is also clearly erroneous because it violates Fed. R. Evid. 706. The court's directives have essentially designated an unnamed state computer forensic examiner as a court appointed expert. Computer forensic analysis constitutes "expert" testimony that, to be admissible, must satisfy Rule 702 and *Daubert. See e.g. United States v. Flocker,* 504 Fed. Appx. 637, 639 (9th Cir. 2013) (unpub'd) (affirming district court's admission of computer forensic testimony that satisfied Rule 702 and Daubert). Rule 706, however, contemplates an open process whereby either the parties or the court may suggest a particular expert, and once selected, the court clearly identifies on the record what duties that expert should perform. The Federal Judicial Center published a survey and guidance memo on the use of court-appointed experts (in 1993), and that report specifically cautioned federal judges to avoid ex parte contacts: "Case law and canons of judicial ethics discourage off-the-record contacts between a judge and an expert witness. . . The norm, as stated in the Code of Conduct for United States Judges, is that a judge should not consider ex parte or other communications on the merits . . . of a pending or impending proceeding." Cecil, J. & Willging, T, *Court Appointed Experts: Defining the Role of Experts Appointed Under Rule of Evidence 706*, at 41 (Federal Judicial Center 1993).

8. Pending further disclosures from the Court, the United States is contemplating what further remedies it might seek. The Government may seek a reconsideration or withdrawal of the Court's order, or other relief. The order should be stayed until such time as the court rules on the United States' motion for further disclosure and to permit the United States reasonable time to pursue its appropriate legal remedies.

Government's Emergency Motion for Stay of Sealed Order, Return of Mirror Page 7
Images, and for Disclosure of Communications with Oregon Department of
Justice (UNDER SEAL)

For the foregoing reasons, the United States respectfully requests that the Court Stay its November 18, 2013, order directing the Oregon Department of Justice to seize and forensically examine certain computers, direct ODOJ to turnover any copies of the government's computer equipment to the United States, and disclose to the United States the entirety of the Court's communications with the Oregon Department of Justice.

Dated this 6th day of December, 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*/s/ Scott Erik Asphaug*
SCOTT ERIK ASPHAUG
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2013, I made service of the foregoing **Government's Emergency Motion for Stay of Sealed Order, Return of Mirror Images, and for Disclosure of Communications with Oregon Department of Justice (UNDER SEAL)** via email to the parties below:

| For Defendant Joseph Pedersen | For Defendant Holly Grigsby |
|---|---|
| Richard L. Wolf<br>richardlwolf@att.net | Kathleen Correll<br>kmc@kmcorrellattny.com |
| C. Renee Manes<br>Renee_Manes@fd.org | Laurie Bender<br>Lbenderlaw@aol.com |

/s/ Scott Erik Asphaug
SCOTT ERIK ASPHAUG
Assistant United States Attorney

STATE OF OREGON            )           AFFIDAVIT OF SCOTT ASPHAUG
                           ) ss:
COUNTY OF MULTNOMAH        )

I, Scott Erik Asphaug, being duly sworn, depose and say:

1. On November 27, 2013, after learning that computers and other electronic components were seized from Detective Dave Steele and Analyst Janine Hackett of the Oregon State Police, I attempted to learn who seized the components and under what authority they were seized. I subsequently spoke with Captain Calvin Curths of the Oregon State Police who told me he could not provide any details of the seizure, but in response to my request for the contact at the Oregon Department of Justice, directed me to an individual named Mark Posler. Mr. Posler told me he could not provide any details and suggested that I contact the court.

2. Prior to filing the Emergency Motion for Disclosure of the Court's Order, I learned from the prosecution team that the computers likely contained information related to other related, but separately charged defendants, cooperators, and other independent cases. In subsequent phone calls with Detective Steele, I confirmed that at the time of seizure his computer hard drive contained the following electronic files:

   A. Information related to other separately charged defendants arising out of the Pedersen/Grigsby investigation;

   B. Information related to cooperating individuals concerning the Pedersen/Grigsby investigation;

   C. Other material for which claims of privilege would apply;

   D. Internal communications between the prosecution team including planning and strategy discussions for the entire Pedersen/Grigsby investigation;

**Affidavit of Scott Erik Asphaug**                                                    **Page 1**

E.  Information related to separate, unrelated, state criminal investigations involving potential prosecutions for murder, rape and child pornography offenses; and

F.  Personal information including portions of the detective's personnel file, emergency contact information, and personal health records.

3.  On Monday morning, December 2, 2013, I called Darin Tweedt, Chief Counsel of the Criminal Division, Oregon Department of Justice, to attempt to get any additional information regarding the seizure. Mr. Tweedt also refused to comment on the nature of the seizure, but acknowledged the Order emanated from the district court. At the conclusion of the call, I sent Mr. Tweedt an email formally objecting to the state conducting any testing of the data on the computers. A copy of that email is attached as Exhibit 1.

4.  On Monday afternoon, December 2, 2013, I received a copy of the district court's sealed Order.

Scott Erik Asphaug
Assistant United States Attorney

SUBSCRIBED AND SWORN to before me on the ___6___ day of December, 2013.

OFFICIAL STAMP
MELISSA ANN STEWART
NOTARY PUBLIC-OREGON
COMMISSION NO. 920406
MY COMMISSION EXPIRES SEPTEMBER 22, 2017

Melissa Ann Stewart
Notary Public for Oregon
My Commission Expires: 9/22/2017

## Asphaug, Scott (USAOR)

**From:** Asphaug, Scott (USAOR)
**Sent:** Monday, December 02, 2013 10:49 AM
**To:** 'darin.e.tweedt@doj.state.or.us'
**Subject:** Seizure of OSP Computers

Dear Mr. Tweedt

This email confirms our phone conversation of today regarding the seizure of OSP computers related to the Pedersen/Grigsby federal criminal investigation. Given the extraordinary nature of this seizure and the fact that you are unable to comment, the purpose of this email is to formally object to any testing of any data on a computer or other digital source related to a federal investigation until such time as the United States is given notice of the Order and has an opportunity to brief and be heard on the matter.

To be clear, in the context of this federal investigation, the State of Oregon is acting as an agent of the United States. The State of Oregon, therefore, does not have the independent authority to agree to a seizure of computers related to a federal investigation or a search of any material on those computers.

Thank you

Scott Erik Asphaug
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue
Suite 600
Portland, OR 97204
(503) 727-1008

**Exhibit 1**