1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3                 PORTLAND DIVISION

4
    UNITED STATES OF AMERICA,          )
5                                       )
                        Plaintiff,     ) Case No. 3:12-CR-00431-HA
6                                       )
                   v.                  )
7                                       ) March 3, 2014
    DAVID JOSEPH PEDERSEN, a/k/a        )
8   "JOEY" PEDERSEN, and HOLLY ANN      )
    GRIGSBY,                            ) Portland, Oregon
9                                       )
                        Defendants.    )
10  _____)

11

12

13

14               MOTION HEARING

15            TRANSCRIPT OF PROCEEDINGS

16       BEFORE THE HONORABLE ANCER HAGGERTY

17    UNITED STATES DISTRICT COURT SENIOR JUDGE

18

19

20

21

22

23

24

25

```
 1                          APPEARANCES

 2   FOR THE PLAINTIFF:

 3   Jane Shoemaker
     Hannah Horsley
 4   Scott Asphaug
     S. Amanda Marshall
 5   United States Attorney's Office
     1000 SW Third Avenue
 6   Room 600
     Portland, OR 97204
 7

 8   FOR DEFENDANT PEDERSEN:

 9   C. Renee Manes
     Federal Public Defender
10   101 SW Main Street
     Suite 1700
11   Portland, OR 97204

12   Richard Wolf
     Richard L. Wolf, PC
13   12940 NW Marina Way
     Slip A
14   Portland, OR 97231

15   FOR DEFENDANT GRIGSBY:

16   Laurie Bender
     Laurie Bender PC
17   735 SW 1st Ave 2nd Flr
     Portland OR  97204
18
     Kathleen M. Correll
19   Correll & Associates
     PO Box 13351
20   Portland OR  97214

21   COURT REPORTER:          Jill L. Erwin, CSR, RMR, RDR, CRR
                              Certified Shorthand Reporter
22                            Registered Merit Reporter
                              Registered Diplomate Reporter
23                            Certified Realtime Reporter

24                            United States District Courthouse
                              1000 SW Third Avenue, Room 301
25                            Portland, OR 97204
                              (503)326-8191
```

TRANSCRIPT OF PROCEEDINGS

1

2          MS. SHOEMAKER:  Good morning, Your Honor.  Calling

3  Case No. 3-12-CR-431.  United States v. David Joseph

4  Pedersen and Holly Ann Grigsby.  I'm Jane Shoemaker, for the

5  United States, and with me is Amanda Marshall, United States

6  Attorney, and Assistant United States Attorneys Scott

7  Asphaug and Hannah Horsley.  The defendants are present, in

8  custody, with their attorneys.  For Mr. Pedersen, Rene Manes

9  and Rich Wolf are both present.  For Ms. Grigsby, Ms. Bender

10  and Ms. Correll with both present.  This matter is on for a

11  status hearing.

12          Originally, two motions were set to be heard, but I

13  believe they are both moot at this time, which would be

14  Mr. Pedersen's pro se motion to compel discovery number 360,

15  which I believe the Court has entered an order finding that

16  moot, and the Government's motion to delay ruling on the bad

17  faith finding, any bad faith finding, until after a decision

18  was made on the death penalty motions, which was 347.

19          The Court has set hearings -- further hearings

20  regarding the -- any finding of a bad faith, pursuant to the

21  defendant's oral motions, and Mr. Asphaug or Ms. Marshall

22  will address the remaining issues.

23          Relating to those motions, in addition, on Friday

24  afternoon Holly Grigsby's attorneys filed a motion to

25  continue the trial date, and I am prepared to respond to

1    that motion in whichever order the Court would like to hear

2    the matters.

3            THE COURT:  Well, I understood from Ms. Grigsby's

4    motion, through her attorney, that the Government did not

5    oppose the motion to continue; however, Mr. Pedersen,

6    through his attorneys, have indicated that they, in fact, do

7    oppose a continuance.

8        With those statements in the motion, I think the Court

9    understands the various parties' positions, and I think at

10   this time it's unclear exactly how much additional discovery

11   is going to be provided, and therefore I'm not certain that

12   Defendant Grigsby cannot be prepared in light of the fact

13   that Defendant Pedersen will be prepared.

14       So I'm going to deny that motion at this time and leave

15   the trial date as scheduled.

16       Now, of course, as the additional material is provided,

17   if it appears that that July trial date is unworkable, then

18   that would have to be brought to the Court's attention at a

19   later time; but at this time the Court is going to deny the

20   motion for a continuance.

21           MS. SHOEMAKER:  Thank you, Your Honor.

22       And in view of the fact that the case will be going

23   forward to trial on July 7th, at least as of now, the

24   Government would request that the Court set dates for the

25   filing of pretrial motions and hearings.  We had proposed a

1    number of dates to the defense earlier.  We've talked about

2    having two rounds of pretrial motions.  One would be

3    substantive motions to dismiss or motions to suppress, and

4    the Government is particularly concerned and would like to

5    have heard in that first round of motions any objections to

6    the Government's proposed recorded statements of the

7    defendants that it intends to offer at trial.

8        With the exception of a limited number of Yuba City

9    jail recordings, we don't intend to offer any other jail

10   recordings at trial.  But there are many hours of recorded

11   interviews between the defendants and law enforcement, as

12   well as statements, where the defendants were talking to one

13   another, not during an interview with law enforcement, but

14   being recorded, with their knowledge, while they were in

15   Yuba City.  And the Government will identify the

16   statements -- the portions of the statements that it intends

17   to use; the statements of the defendants to law enforcement

18   that we intend to offer at trial and propose transcripts of

19   those statements by March 21st.

20       And we are requesting that in that first round of

21   motions the defense be required to identify any objections

22   they have to the portions of the conversations that we

23   intend to offer at trial, as well as any objections to the

24   transcripts.

25       The Government is proposing that those motions, as well

1    as motions to suppress and dismiss, be filed on April 4th,

2    the Government's response is on April 18th, replies on

3    April 25th, and then a hearing on the motions, we would

4    propose, if the Court is available, on May 2nd.

5         Then --

6              THE COURT:  Let me interrupt you, Ms. Shoemaker.

7    If I understand you correctly, you wish to identify the

8    recordings by March 21st and then give the defendants

9    roughly two weeks to identify which of those they're going

10   to file objections -- motions against and actually file the

11   motions by April 4th?

12             MS. SHOEMAKER:  Yes, Your Honor.  These were

13   recordings that were provided in discovery a long time ago.

14   We're simply narrowing down the statements that we actually

15   intend to offer at trial.

16        The reason we want to have this litigated early in the

17   case is because once we obtain rulings from the Court on the

18   admissibility of those particular statements we're going to

19   need to redact the videos and the recordings and the

20   transcripts and sync them for presentation at trial, and

21   that's a very time-consuming process for our litigation

22   support.  And so we want to ensure that we have rulings on

23   that as far in advance of trial as possible, so they have

24   time to complete those redactions and syncing of those

25   recordings.  And hopefully we'll have that all ready before

1    our trial exhibits, our binders, are due to be presented to

2    the Court and to the defense, along with our trial

3    documents.

4         So we've also -- we're proposing an early scheduling

5    for filing the pretrial documents, as well.

6         So all of these issues can be taken care of well in

7    advance of trial, and any additional motions in limine could

8    be filed along with the regular pretrial documents, as we

9    normally do.

10             THE COURT:  I may have missed it, but if the

11   defendants were to file their motions by April 4th, what

12   time frame would the Government have to respond to the

13   motions?

14             MS. SHOEMAKER:  We're proposing a two-week

15   response time for us to respond.  And this would include

16   their motions to dismiss and their motions to suppress.

17             THE COURT:  And we would still need to schedule a

18   date for a hearing?

19             MS. SHOEMAKER:  And the Government's proposing

20   May 2nd.

21             THE COURT:  Okay.  Ms. Manes?

22             MS. MANES:  Good morning, Your Honor.  Rene Manes

23   here with my co-counsel, Mr. Wolf, on behalf of

24   Mr. Pedersen.

25        First, I would like to ask a preliminary issue, which

1   is there is one matter that was originally scheduled for

2   hearing on the 19th and then on the February 7th date that

3   I'm not sure has been taken care of, and that was the motion

4   to unseal the Government's filing regarding

5   Detective Steele.  The Government had filed that under seal

6   in -- on December, I believe, 18th or 19th, of last year.

7   We had moved to unseal the material.  The Government had

8   originally objected.

9        I understand they withdrew their objection in a filing

10  on February 6th.  We have never seen an order technically

11  lifting the sealing of the Detective Steele material, and

12  therefore, as one issue today, we would like to just confirm

13  that the orders of December 19th that precluded -- both

14  sealed the information and also precluded us from discussing

15  it with anyone, have, in fact, been lifted.

16          THE COURT:  One second.  Mr. Huseby advises me

17  that his recollection is that the Government's response was

18  filed publicly, which means that sort of is already in the

19  public domain.

20      Ms. Shoemaker?

21          MS. SHOEMAKER:  Yes, Your Honor.  The Government

22  filed a supplemental response to Defendant Pedersen's motion

23  for reconsideration of the orders sealing that notice and

24  precluding disclosure of it.  And when we filed that

25  supplemental response, which is Docket 367, we filed it

1    under seal.

2        However, the Court then drew a line through "filed

3    under seal," and initialed that.  And attached to that

4    supplemental response was our proposed redacted notice.  So

5    it was our understanding that when the Court redlined "filed

6    under seal" that made the notice, in redacted form, become

7    public filing.  And then it was publicly filed under that

8    docket number 367 on February 6th.

9            MS. MANES:  I just wanted to confirm for the

10   record that no party is any longer bound by the

11   December 19th orders regarding the Detective Steele issues.

12       In terms of other issues raised by Ms. Shoemaker, in

13   terms of the trial scheduling motions, I'm not sure that the

14   parties are prepared to go forward with specific dates at

15   this time.

16       I will note that in the order scheduling the trial for

17   July 7th there was also a scheduling date for motions of

18   June 16th.

19       In our conversations with the Government, their concern

20   was June 16th did not allow sufficient time for motions that

21   are more substantive, such as motions to dismiss or motions

22   to suppress, that perhaps the June 16th motion order would

23   be better served for trial motions, such as motions in

24   limine.

25       We could certainly agree and discuss appropriate dates

1  for substantive motions.

2      I will say that from our perspective the Court has

3  scheduled an evidentiary hearing on April 7th, 8th, 9th.  I

4  think prior to that evidentiary hearing, that is going to be

5  where the defense team's efforts are focused, and we're not

6  going to be able to address, prepare, and be ready to file

7  on any substantive motions certainly prior to that date and

8  probably for a few weeks afterwards.

9      I would think that a filing of a substantive motion

10 date on around the first week in May or maybe even the first

11 Monday of the second week in May would give this Court an

12 opportunity to have briefing and then a hearing on

13 substantive motions in early June, with trial documents

14 filed June 16th, if that's all right with the Court's

15 calendar.  But that should allow sufficient time, I think,

16 for all of the parties, both to brief these issues and then

17 for the work to be done for preparation of trial on July

18 7th.

19      THE COURT:  Somehow or another Mr. Moore knew I

20 had an outdated calendar.

21      You can proceed, Ms. Correll.

22      MS. CORRELL:  Your Honor, one of the reasons that

23 I filed a motion to continue on behalf of Ms. Grigsby is

24 that we were advised last week, during our conferral with

25 the U.S. Attorney's Office, that they had not completed

1   their audit of -- I think they had completed the audit of

2   the OSP materials, but not the FBI materials.

3        The audit of the OSP materials turned up 27 banker

4   boxes' worth of stuff that Ms. Bender is going to start

5   going through this week with our paralegal Sergio Perez.

6        I don't know -- I haven't been advised of any update on

7   the FBI audit.

8        It just seemed to me, hearing that, that that, in and

9   of itself, made the current trial date unrealistic.  And I

10  think it's still unrealistic.  And it seemed, to us, that

11  bumping it to the end of September would work for the

12  parties and allow a less frenetic pretrial litigation and

13  trial preparation.

14       Now, I mean, I can certainly refile something once

15  we've looked at the 27 banker boxes, but we're still -- we

16  don't have a date on the FBI audit.  We don't know what's

17  going on with the investigation of Detective Steele.  We

18  don't have any update on that.  So it just seemed like there

19  were a lot of balls up in the air that clearly indicated

20  that July was not going to be workable.

21       Now, certainly, I can come back and bring this up

22  again, but it seemed, to me, like we were all here, and I

23  think the Government was not going to oppose our request,

24  because I think they understand the situation that that puts

25  us in; having, you know, 27 boxes of new discovery to look

1    through at this particular point in time.

2         It's got to be scanned.  You know, we have to have our

3    investigators look at it, we have to determine what

4    additional investigation needs to be done, how it's going to

5    impact the pretrial motions that are going to be filed, so

6    it was really, you know, on that basis that I -- I just

7    thought I'm going to file this motion so we can have a

8    discussion about it today with you.  But that's -- that's

9    still my opinion, Judge, that that -- because of those 27

10   new boxes of material, it's going to make the trial -- the

11   July trial date really difficult to make.

12             THE COURT:  Ms. Shoemaker?

13             MS. SHOEMAKER:  Your Honor, I wanted to provide an

14   update in response to Ms. Correll's comments.  Our office,

15   as part of the audit, did remove all the material from OSP.

16   And by next week we will have either provided or made

17   available for the defense inspection and copying everything

18   from OSP and the FBI.  This week we're currently redacting

19   the OSP master reports and the property reports and expect

20   to produce those for the defense this week.

21        I should say that of the items, both these master

22   reports and the 27 boxes of material from OSP, that we

23   believe that it is largely duplicative of material that they

24   already have.

25        The 27 boxes from OSP does include electronic media.

1    It's largely duplicate jail calls and scanned correspondence

2    from the jails, a number of reports, and things, that are

3    the working copies, so we don't expect that much of that is

4    actually going to be new material.  But, in an abundance of

5    caution and to expedite the defendant's review of that

6    material, we have decided to make it available for them to

7    come over, go through the material, and let us know anything

8    they want us to reproduce for them.

9        As I mentioned earlier this morning, we have also

10   decided that we are not going to be offering any of the jail

11   calls at trial, other than a limited number of the jail

12   recordings while they were at Yuba City County Jail.

13       So we do -- I mean, we did, you know, take that

14   position.  We were not going to oppose Ms. Grigsby's request

15   for a continuance because we understand the concerns they

16   have regarding the discovery, but we'll also be prepared to

17   go to trial on July 7th, as scheduled.

18       Our concern with the dates that Ms. Manes was proposing

19   is if we don't wind up having a hearing on -- if the motions

20   aren't even filed until sometime in May and then we file our

21   response and then the Court has a hearing and Court has time

22   to digest this and rule on that, we're not going to

23   get -- likely have rulings until weeks or a month before

24   trial, which makes it very difficult for our office to be

25   able to redact those transcripts and recordings and sync

1   them in time for trial and certainly in time to include in

2   the binders with the trial exhibits.

3       Also, our understanding from the original dates the

4   Court had set for pretrial matters, we understood that to be

5   the hearing on those motions and that the pretrial motions

6   would be filed sometime prior to that, where we have an

7   opportunity to file responses and the Court's going to have

8   time to rule on those matters sufficiently in advance of

9   trial that the parties know what evidence is going to be

10  coming in, and to adjust, based on the Court's ruling, to be

11  able to submit our pretrial documents.

12      So, again, our primary concern with the pretrial

13  motions is getting any objections ferreted out and the

14  rulings on those with regard to the recorded statements and

15  transcripts.  But it makes sense to us, as well, that any

16  motion to dismiss or suppress also be litigated well in

17  advance of trial.

18      I understand that there are going to be hearings.  The

19  hearings have been bifurcated, but the reason it's been put

20  off until April is simply over scheduling issues between the

21  parties and the Court.  These have been ongoing matters that

22  have been litigated, and it just seems to us if we're going

23  to trial in four months that we shouldn't be putting off the

24  motions until the month before trial.

25          THE COURT:  With your limiting the recordings to

the Yuba City communications between the defendants, do you
know how many minutes or hours these recordings are composed
of?

            MS. SHOEMAKER:  I don't know exactly how many.
It's really hard to estimate.  I -- there are a lot.  When I
listened to them -- there weren't transcripts at that time,
but I would say it took me over a hundred hours to listen to
them.  But that was a lot of stopping and going back to hear
what was being said, because I didn't have the benefit of
transcripts.

     So I don't know how many hours there are.  We certainly
aren't going to be offering near that many.  But it's still
going to be -- we haven't decided exactly which ones yet,
and we'll be deciding that over the next couple of weeks.

     But it -- it is going to take some time to redact those
and sync the transcripts, and we don't know what the
defense's position is going to be on the portions that are
being offered, but it seems, to us, that it would be good to
resolve those issues well in advance of trial.

            THE COURT:  Well, my initial thought, and that's
why I sort of walked though the dates, is if you don't plan
on producing this material until March 21st, the April 4th
date would not, in my opinion, give the defendant a
sufficient period of time to adequately go through them to
file motions by April 4th.

1    So I'll take the matter under advisement, but I'm

2    pretty much telling you right now that those dates are not

3    going to work.  So I don't know what the Government is going

4    to do insofar as getting the material to the defendant

5    sooner than the March 21st date or possibly preparing

6    exhibits once the trial has commenced, but that -- that

7    date's -- okay, the April 4th date I don't think is going to

8    work.

9        There was also a motion -- number 248 -- to have this

10   matter, insofar as discovery, assigned to a magistrate

11   judge.  I'm going to deny that request, because I don't

12   think it would be appropriate to have duplication of

13   efforts; send it to the magistrate and having a magistrate

14   make findings and recommendations and having me review it

15   from that standpoint.  So that request by the Government is

16   going to be denied.

17       In the most recent filing, there was another request

18   for an additional line of discovery, and this pertains to

19   the -- what's referred to as the Blue Book.

20       This morning the Court read through the recent lawsuit

21   that was filed in the U.S. District Court in the District of

22   Columbia.  It's *National Association of Criminal Defense*

23   *Lawyers v. The Executive Office of U.S. Attorney's Office.*

24   That's number 14-269.

25       In that complaint, which is a freedom of information

1   declaratory judgment proceeding, a lot of the objections

2   that are raised in this Court, insofar as the production,

3   have been stated, and in Defendant Grigsby's motion, they

4   proposed that the document could be produced in accordance

5   with a protective order.

6        I don't know if the Government has actually considered

7   that, but I guess we could throw it open to Mr. Asphaug.

8              MR. ASPHAUG:  Yeah.  Thank you, Your Honor.  The

9   difficulty that I've had this morning is that Washington,

10  D.C., is having yet another snowstorm, so I have not been

11  able to confer with counsel at the Executive Office of the

12  United States Attorney to get their position, and it's their

13  document.

14       However, here's what we can tell the Court:  The Blue

15  Book, as it's called, we do object to that document being

16  used, because we believe that there are adequate alternative

17  documents available publicly to the defendant to get all the

18  same material.  First, there's the Ogden memo.

19             THE COURT:  I'm sorry.  Which memo?

20             MR. ASPHAUG:  First there's a memo called the

21  Ogden memo from January 4th, 2010.  That is a memo to all

22  U.S. Attorneys' Offices and Justice Department components

23  related to the production of discovery in criminal cases.

24  That is publicly available.  We will make a link to that

25  document available to the defendants at the conclusion of

1    this hearing.

2         In addition, there is another document called the

3    September 12 USA Bulletin on Criminal Discovery.  That is,

4    again, another public document related to criminal

5    discovery, and we believe that it encompasses essentially

6    the same material, but it is not an internal document that

7    the United States wishes to protect.

8         The last matter is recommendations for electronic

9    discovery in federal criminal cases.  That was drafted by

10   the Joint Electronic Technology Working Group, which

11   included members of the defense bar.  That is another

12   document that is publicly available.

13        The last document that we have not discussed with

14   defense, but we can discuss now, relates to a direction to

15   the United States Attorneys' Offices in what I've described

16   as the Ogden memo.  That Ogden memo directed United States

17   Attorneys' Offices in each district to draft their own

18   criminal discovery policies and the United States Attorney's

19   Office for the District of Oregon in 2011 did draft such a

20   document, and we are prepared to make that available to the

21   defense, under a protective order, with a limited redaction

22   as it relates to national security issues, where there's a

23   section related to national security issues, and we would

24   like to propose to the Court that we redact that, show it to

25   the Court in camera, under seal, and allow the Court to

1  assist us in that process before we make it available to the

2  defendants.

3      So we're prepared to offer all those documents in lieu

4  of additional litigation on whether this Blue Book should be

5  provided to the defense in anticipation of next week's

6  hearing.

7          THE COURT:  Ms. Correll?

8          MS. CORRELL:  Your Honor, it's difficult, without,

9  obviously, knowing what is in the Blue Book, how it would be

10 different than the materials that Mr. Asphaug suggests.  I

11 know that the discovery of the Blue Book was created after

12 the discovery debacle in Senator Ted Stevens' case.  The

13 Blue Book was created to ensure that those types of errors

14 didn't happen again in other criminal cases.  I think that a

15 protective order -- we were certainly willing to be bound by

16 it -- would be very useful to know the actual

17 Attorney General's position on how criminal discovery should

18 be handled.

19     I can't imagine that he created it to have no other

20 material than what is publicly available.  And so I am not

21 sure what interest of the DOJ's is not protected by a

22 protective order, which you could issue, which would make

23 it -- you know, we could have a discussion about it under

24 seal.  If there needs to be questions about it, that portion

25 of the hearing could be sealed.  Perhaps we could be

1  requested to give our copy back at the end of our use of it

2  at the hearing.

3      It just seems, to me, that this U.S. Attorney's

4  Office's ability to follow national policy and

5  recommendation given out by the Attorney General is relevant

6  to a good faith or bad faith argument, and so that's why we

7  requested it.

8      I know that they don't want to disclose it, but I think

9  a protective order would address all the issues that they

10  are concerned about.

11            THE COURT:  Do you wish to be heard, Ms. Manes or

12  Mr. Wolf?

13            MS. MANES:  No, Your Honor.  Thank you.

14            THE COURT:  Mr. Asphaug, do you know approximately

15  how many pages this Blue Book contains?

16            MR. ASPHAUG:  The Blue Book is approximately an

17  inch to an inch-and-a-half thick, so I'm going to say 200

18  pages, perhaps.

19      I do also -- I did also forget to note that the U.S.

20  Attorneys' Manual, Section 9-5.001 et. seq., is also

21  available to the defendants, and they've cited it in this

22  matter.  That is the criminal discovery portion of the U.S.

23  Attorneys' Manual.

24            THE COURT:  Just for the Court's edification, as I

25  read through the complaint -- and obviously it's from the

1    plaintiff's point of view, but in that complaint they assert

2    that the Government relies on the work product privilege,

3    which U.S. Attorney's Office here has asserted, as well as

4    the deliberative process privilege.

5        But I didn't see in any of the materials, files in this

6    case, that the Government's also relying on the deliberative

7    process privilege.

8              MR. ASPHAUG:  We did not discuss it, and I did not

9    have an opportunity -- this was raised in Friday's

10   conferral.  So at the time that I made our objection, I had

11   not read the opinion.  I had not made seen what the

12   Government had filed in response.

13             THE COURT:  They have not filed anything in D.C.

14             MR. ASPHAUG:  We would rely on all privileges

15   available to us, including a deliberative process privilege.

16             THE COURT:  Do you wish to brief that further,

17   because, in my reading of just the complaint, as well as my

18   understanding of those two privileges, I was wondering how

19   they would fit in a discovery request when -- well, I'm just

20   wondering --

21             MR. ASPHAUG:  Yes.  We would brief that issue,

22   Your Honor, if the Court would give us a little bit of time.

23             THE COURT:  End of the week?

24             MR. ASPHAUG:  Yes.  Thank you.  We are still

25   prepared, however, to turn over the material that I've

1    mentioned.  I think I said in lieu of --

2           THE COURT:  As I heard Ms. Correll, she's not

3    necessarily interested in any of that material.  She wants

4    the Blue Book.

5           MS. CORRELL:  That's correct.

6           MR. ASPHAUG:  Well, then we won't.  Thank you,

7    Your Honor.

8           THE COURT:  All right.  There's another matter

9    that the Court just wants to be clear on, and that is there

10   was a question as to whether or not Ms. Marshall and

11   Mr. Asphaug could represent the Government at the

12   evidentiary hearing with respect to the Sixth Amendment

13   allegations.

14       Defendant Pedersen indicates that they have no

15   objection as long as they can still call Ms. Marshall and

16   Mr. Asphaug as witnesses at that hearing.  The Court's

17   review of the professional responsibility Rule 3.7

18   references during the trial that an attorney should not be

19   both a witness and a representative and I just want to

20   confirm that that's the party's understanding, as well; that

21   that prohibition applies to trial and not necessarily to an

22   evidentiary hearing.

23       Ms. Manes?

24           MS. MANES:  Yes, Your Honor.  And it was on that

25   basis that we withdrew our objection to having Mr. Asphaug

1    and Ms. Marshall act as counsel at the continuation hearing.

2         We, after initially meeting and conferring and also

3    reviewing this Court's order, last Tuesday we did some

4    further analysis and review of the rule and the various

5    opinions on it, and it's our understanding that that rule

6    only applies in a trial session -- situation, not in an

7    evidentiary hearing situation.

8         I do think there are two other issues regarding the

9    evidentiary hearings which are to be addressed -- need to be

10   addressed at this time.

11             THE COURT:  That's Mr. Williams?

12             MS. MANES:  Not Mr. Williams.  I believe it's the

13   information regarding Detective Steele.  From the defense

14   perspective, we believe he's a government agent.  The

15   Government should either produce him or make the

16   affirmatively required showing that he is, in fact,

17   asserting his Fifth Amendment privilege against not

18   testifying.

19        And then also just from Mr. Pedersen's perspective, we

20   have already issued some subpoenas for the attendance of

21   witnesses on March 11th and 12th.  Our section of the

22   hearing will now be in April.  We will seek an order to

23   continue our subpoenas, and then we will be writing letters

24   to the witnesses to tell them that they do not have to

25   arrive on March 11th, but, instead, on April 7th.

1          THE COURT:  That oral motion, as such, will be

2     granted.

3          MS. MANES:  Thank you, Your Honor.

4          THE COURT:  All right.  When you say it didn't

5     pertain to Mr. Williams, do I understand that you still

6     desire to call Mr. Williams as a witness?

7          MS. MANES:  Yes, we do.  But the issue of having

8     him act as counsel does not pertain to him testifying.

9          THE COURT:  All right.  Mr. Asphaug, as to the

10    availability of Detective Steele, or, Ms. Shoemaker, have

11    you been able to determine that?

12         MR. ASPHAUG:  I have not, Your Honor.  I

13    understand that a -- that a public announcement related to

14    the ongoing criminal investigation of Mr. Steele is

15    forthcoming; however, Mr. Steele remains represented by

16    counsel.  Both counsel for the defense and the Government

17    sought some information just as late as last week from

18    counsel for Mr. Steele related to whether he would be

19    available.  We have been told nothing in response to that.

20         So we will continue to pursue that, and I think we can

21    answer that question by next week's hearing, which is the

22    evidentiary portion, and he would not be called, I'd

23    understood, until the following piece of -- in April.

24         MS. MANES:  I believe that the issue of

25    destruction of evidence would be relevant to the -- the bad

1   faith issues regarding discovery issues, and, therefore,

2   I -- I was under the impression that Detective Steele was

3   viewed as a necessary witness for both sessions of the

4   hearing.

5             MS. CORRELL:  I was, as well, Your Honor.

6             THE COURT:  Well, in that regard, the best way to

7   find out is if the defendants either jointly or separately

8   issued a subpoena to Detective Steele.  You would be advised

9   as to whether or not he would, in fact, appear at the

10  hearing we have scheduled.  I guess it's March 11th and

11  12th.

12            MS. MANES:  We can certainly endeavor to do so,

13  Your Honor, but that's -- that's part of the problem that we

14  are -- we are faced with.

15       Detective Steele has acted as an agent of the United

16  States Attorney's Office at all points in time relevant to

17  this.  He is a party witness.  He is not an independent

18  witness.  We think it's the Government's obligation to

19  present him as a witness to substantiate their good faith.

20       We will certainly ask the marshals to attempt to

21  subpoena him.  Their ability to do so between now and

22  March 11th, I'm not sure that I can -- I can confirm, but we

23  will make that effort.

24       But we just want the record to be clear that it's our

25  position he's acted as an agent.  He's never acted as a

private individual in relation to his actions in this case.

It's incumbent upon the Government to present their agents.

Just as they're presenting Ms. Shoemaker and Ms. Horsley.  I

do not have to subpoena them to obtain their presence in

this courtroom.  They're already before this Court as an

agent of the parties.

THE COURT:  Mr. Asphaug?

MR. ASPHAUG:  I don't disagree with what she said.

Mr. Steele is no longer on the prosecution team.  During the

time he was, he certainly was an agent of the United States.

On the other hand, Mr. Steele, like all individuals,

have a right to counsel.  He's exercised that right, and

he's effectively removed himself from our direct contact

under the rules of professional responsibility.

I will endeavor to seek Mr. Staropoli,

Michael Staropoli is his attorney.  And I can ask

Mr. Staropoli to take a position one way or the other --

THE COURT:  That's --

MR. ASPHAUG:  -- by Thursday of this week, and

we'll know if that's satisfactory.

THE COURT:  All right.  I don't know if the

parties have actually stated the status of the discovery

audit.

Would that be Ms. Shoemaker?  Did you indicate where we

are with respect to that?

1          MS. SHOEMAKER:  Your Honor, I can say it's still

2    ongoing.  And at the hearing next week Susan Cooke will be

3    testifying as a witness and can address that in detail.

4          But, as I mentioned earlier this morning, at this point

5    we have removed all evidence and reports from OSP and have

6    that in our possession, and we've made that available for

7    the defense to inspect, the 27 boxes that were removed from

8    the Cave area and other work areas, and we will be -- we had

9    to suspend the audit of the materials in FBI's custody in

10   order to complete that OSP portion of the audit.  Ms. Cooke

11   will be resuming that; but, in the meantime, we've also made

12   that material available for inspection by the defense.

13         And I should note, for the record, that from the

14   beginning of the case, early in the case, we advised the

15   defense that they were able to make appointments with the

16   FBI to inspect the evidence that is in their custody.

17         So the audit is still ongoing and the specific details

18   will be presented to the Court during the evidentiary

19   hearing next week.  We're hopeful that in the very near

20   future all the discovery will have been completed.  But we

21   are still going back and reviewing all the reports to ensure

22   that, you know, whatever may be missing, that we can track

23   that evidence down or attempt to track that evidence down

24   and provide everything as promptly as we're able.

25         THE COURT:  Ms. Correll?

1          MS. CORRELL:  Your Honor, just in regard to the 27

2    boxes, I -- it may be that there's a fair chunk of that

3    material that is duplicative of what we've already received.

4    The fact of the matter is we still have to go through 27

5    boxes of material, page by page, to make -- it's not such an

6    easy determination to make.  And just that process -- I

7    mean, 27 boxes, you can figure, would take up a good chunk

8    of this middle area.

9          So, again, I would just like to state I still think

10   that's an enormous amount of material for us to go through,

11   given the current scheduling date the Court is contemplating

12   for the July 7th trial date.

13         THE DEFENDANT:  Judge Haggerty?

14         THE COURT:  Just one second, Mr. Pedersen, before

15   I forget this thought.

16         Going back to something I had mentioned earlier, there

17   was an objection by the Government to either Ms. Marshall or

18   Mr. Williams be called as a witness.  The Court is not

19   exactly clear as to the basis of the Government objection.

20         MR. ASPHAUG:  Twofold, Your Honor.  First, the

21   pleadings filed by the defense would indicate, at least

22   initially, that the purpose of calling U.S. Attorney

23   Marshall was because she signed a pleading that relied on

24   the declarations of --

25         THE COURT:  Ms. Horsley.

1         MR. ASPHAUG:  -- AUSA Shoemaker and AUSA Horsley.

2    I found no basis by which a litigant who files a pleading

3    relying on the declarations of others makes him or herself

4    available as a witness for that purpose.  So we objected on

5    the fact that simply filing a pleading does not make a

6    person a witness.

7         In response to that, Defendant Pedersen's counsel

8    suggested it was a supervisory question that -- whether the

9    United States Attorney's Office was exercising adequate

10   supervision over the AUSAs in the case.

11        To address that issue, the United States now withdraws

12   its objection to Criminal Chief Bill Williams becoming a

13   witness.  Criminal Chief Bill Williams can testify to all

14   management decisions, and all issues related to supervision

15   of the AUSAs assigned to the case.

16        And so for two reasons:  One, there's no basis to call

17   the United States attorney as a litigant in a 501 pleading;

18   and, secondly, calling Mr. Williams obviates the need to

19   call Ms. Marshall, and any additional testimony of

20   Ms. Marshall would be simply duplicative and accumulative of

21   what management's position is as stated by Mr. Williams.  So

22   those are our objections.

23        THE COURT:  Ms. Manes?

24        MS. MANES:  Yes, Your Honor.  The issues of the

25   evidentiary hearing in April will relate to interference

with the Sixth Amendment privileges of Mr. Pedersen that we
believe was ongoing for more than two years and also relate
to the issues of candor with the parties and the tribunal
once those issues began to come to light.

Once the fact that there had been some interference
with Mr. Pedersen's Sixth Amendment rights to consult and
confer in confidence with the members of his defense team
came to light, was the United States Attorney's Office
compliant with their ethical and, we believe, legal
obligations both under the applicable case law, which we
will certainly be briefing before and after the hearing,
under the United States Department of Justice's policies for
their own conduct and under the Oregon Rules of Professional
Conduct were they forthcoming with the Court.

Both Assistant U.S. Attorney and Chief of the Criminal
Division Mr. Williams and also Assistant U.S. Attorney
Ms. Marshall filed pleadings with this Court making
affirmative representations to this Court and to counsel for
Mr. Pedersen that there have not been interference with
Mr. Pedersen's Sixth Amendment right to counsel by obtaining
confidential communications.  Those were filed last July.

At that point in time we can prove and will be able to
prove that there was significant interference, almost a
hundred phone calls, over 20 letters, analysis of
Mr. Pedersen's interactions with his mitigation specialist.

1   All of these were in the hands of the U.S. Attorney's Office

2   at that point in time.

3       We believe the ethical rules and, in particular, also

4   Federal Rule of Civil Procedure 11, which we do believe is

5   applicable in criminal cases -- and w can brief that

6   issue -- places affirmative obligations on individuals

7   signing pleadings before this Court to make a reasonable

8   inquiry into the truth of the facts they are representing to

9   the Court and to have a reason to believe that what they are

10  saying is true.

11      Mr. Williams and Ms. Marshall's reasons to believe

12  these representations, which we can prove were, in fact,

13  untrue, are certainly at issue in terms of the questions of

14  the Government acting in good faith both at the time of

15  interfering with Mr. Pedersen's Sixth Amendment rights and

16  at the time when that interference came to be known by this

17  Court and counsel for the defense, to act with candor,

18  truth, and be forthcoming about what had happened.  We think

19  all of those issues relate to the good faith and all of

20  those issues are things we should inquire into.

21      We also do believe that there are issues regarding the

22  supervision of the U.S. Attorney's Office.  And while we

23  certainly would like to inquire with Chief Deputy Williams

24  about that, we would also like to inquire with Ms. Marshall.

25  She is, after all, the U.S. Attorney.  She is ultimately

1    responsible.

2        That's why we believe they are necessary witnesses.  We

3    are certainly willing to also allow them to be counsel under

4    the provisions of the Professional Rules of Conduct, and

5    that's our position.

6        I do have one additional issue on another matter we

7    talked about that just occurred to me.  I would like to ask

8    the Court to order the United States Attorney's Office to

9    make available to us Detective Steele's home address for

10   issuance of a subpoena.

11       Most law enforcement officers in the state of Oregon

12   are able to keep their home address out of the public

13   record.  He is, of course, no longer at his employment

14   address, which will make it somewhat difficult for us to

15   obtain service of a subpoena.  But if they can provide us

16   with his home address, we will certainly endeavor to do so.

17            THE COURT:  If he's represented by counsel, have

18   you considered conferring with counsel to see if the

19   attorney would accept the subpoena?

20            MS. MANES:  We have attempted, as Mr. Asphaug has

21   said, to confer with counsel.  I don't think any of us

22   received a response to our inquiries to that counsel.

23       We could certainly subpoena counsel's address,

24   but -- but counsel, of course, not Mr. Steele.  And if he

25   does not want to cooperate with us, which, at the moment, he

1  is not cooperating with either the defense or the United

2  States Attorney's Office -- it places us in a bit of a

3  conundrum.

4          MR. ASPHAUG:  I'm confident that Mr. Staropoli, as

5  an officer of the court, would accept service of a subpoena

6  of his client in this matter if it's necessary, especially

7  if the Court were to direct that to happen.  There's no need

8  to provide Mr. Steele's address, whether we even have it, to

9  the defense in this case.

10         MS. MANES:  If we can all agree that service on

11 Mr. Staropoli will be service on Mr. Steele, we'll accept

12 that representation.

13         THE COURT:  I haven't made that representation.

14         MS. MANES:  We would accept that.  We're willing

15 to do whatever we can do.  We're willing to serve

16 Counsel Staropoli, but if our obligation is going to serve

17 Counsel Steele, the reality is that because he has been a

18 law enforcement officer he has been able to keep his address

19 out of all of the types of databases that we would normally

20 utilize in order to locate and subpoena a witness.

21         THE COURT:  I merely suggested that as a

22 possibility.

23     Inquire and we'll take it up, if necessary, in another

24 fashion, if the attorney's incapable of accepting service on

25 behalf of his client.

1          MR. ASPHAUG:  If I could briefly just respond --

2          THE COURT:  You may.

3          MR. ASPHAUG:  -- related to the United States

4  Attorney Marshall?

5      First, Rule 11 clearly sets forth that attorneys can

6  rely upon the declarations of others.  It's in Section 2B

7  and 2C, I believe.  And as for the supervisory issue at

8  issue that counsel is talking about, we've already proposed

9  that the -- a member of the management team is available to

10  testify to all the concerns that she's raised.

11      Her answer that, "Well, we want to talk to both," just

12  really clearly points out the fact that this is just a

13  fishing expedition, and if they're not satisfied with the

14  answer of Ms. Marshall, then they'll probably want to

15  subpoena Attorney General Holder and then President Obama,

16  too.

17      So, I mean, it all -- at some point there has to be a

18  decision made as to what's relevant testimony and what's

19  cumulative testimony.  We believe that by offering

20  Chief -- Criminal Chief Williams to offer the full synopsis

21  of everything that management was doing, that's adequate for

22  this Court's determination by both relevancy and good faith

23  finding in this matter.

24          THE COURT:  Okay.  Ms. Correll, did you wish to be

25  heard on these latter points?

1          MS. CORRELL:  No, Your Honor.  I'll join

2    Ms. Manes's arguments.

3          THE COURT:  Yes.  Mr. Pedersen, I said I would

4    come back to you, but you're now represented by counsel.  Is

5    this something that you can't confer with your attorney and

6    have them state your position?

7          THE DEFENDANT:  I could if -- if the Court really

8    wanted me to; but, frankly, I'm the only person in this

9    courtroom, outside of the box back here, that is opposed to

10   a continuance, and so I don't know that they would

11   forcefully or --

12         THE COURT:  Well, they've stated your objection to

13   a continuance, and at this point in time I have denied that

14   request.  However, I have to leave open the fact that it may

15   surface that these materials are just not capable of being

16   reviewed in a time frame that would allow the Court to

17   maintain these scheduled trial dates.  Obviously, I'm going

18   to try and keep that trial date, but I have to consider

19   things as they are presented to me.

20      So I understand that you object to a continuance and at

21   this moment I have denied that request, but I have to leave

22   the door open for a future request if presented.

23         THE DEFENDANT:  No, and I heard -- I heard the

24   Court's denial, but then I heard a couple other individuals

25   continue to speak on the issue, and so I just wanted to be

sure that I would be able to, you know, make my position

known, very briefly, since everyone else has gotten to speak

on it, even though it was already denied.

You know, basically I'm ready for trial and my counsel

are ready for trial, and it seems unjust, to me, to delay

the proceedings, where I'm concerned, when I am firm in my

resolve to go to trial, so counsel for a defendant who

likely won't even see trial can have a bit more time.

I understand the desire to reach a global resolution,

perhaps, for Ms. Grigsby, as well as go through some

discovery, but it doesn't make a lot of sense, to me, to

grant a couple more months for resolving something that

could be done in two or three months.

If -- if that is the case, though, if certain

individuals need more time to go over discovery, enjoy their

summer vacations, or whatever their motivating factors are

here, I would put to the Court that it might be a good idea

to grant a severance, and I know typically courts are

loathed to do that, but I think the primary reasons for that

are costs and time involved in running two trials rather

than one.  But here that wouldn't be an issue because

Ms. Grigsby is not likely to see a trial.  So perhaps we

could grant a severance, give them the time they need, and

maintain my July trial date.  I think that might be the best

solution.

1          THE COURT:  Well, that's something the Court and

2    my law clerks have discussed, but, as yet, that was

3    something that the Court was not prepared to do either.

4          THE DEFENDANT:  Okay.

5          THE COURT:  Ms. Manes?

6          MS. MANES:  Nothing further, Your Honor.

7          THE COURT:  Okay.  Are there any other issues that

8    the parties wish to present at this time?

9          MR. ASPHAUG:  Just a couple of things, Your Honor;

10   housekeeping matters.  In the -- in the joint status report

11   filed Friday, we did indicate that they -- we were arranging

12   a date for the defense to review the work area at the Oregon

13   State Police headquarters.  That has been done.  We are

14   meeting there tomorrow at 3:30.

15       The other issue that I don't think we need to address

16   today, but I want to put on the record, is that the -- we do

17   agree that the hearing to be conducted next week, the 11th

18   and 12th, should be an open hearing.

19       The statement goes on to say, however, that the

20   April 7th through 9th period would be sealed.  The

21   Government believes that portions should be in nonpublic

22   forms when issues specifically related to, in fact,

23   privileged communications are discussed, but we don't

24   believe that the entirety of that hearing in April

25   necessarily needs to be under seal.

1      It's going to be -- we would argue a witness-by-witness

2   determination.  That's it.

3           THE COURT:  Anyone wish to be heard on that point?

4           MS. MANES:  I mean I think we could certainly

5   discuss with the Government how if there was a desire by the

6   Government to have portions of the April 7th to 9th hearing

7   unsealed, how we could accomplish that.  I -- I understand

8   their position.  We kind of will have to weave in and out of

9   communications that are privileged at the time of the

10  hearing so it may involve some logistics, which I certainly

11  think that we can perhaps work out by the time of the

12  hearing that's coming up in April.

13      My only other housekeeping issue was that I did just

14  want to put on the record that the Government -- there were

15  several requests for additional documents following on the

16  first production of the filter team items such as more

17  legible copies of various documents that were provided.

18      Mr. Asphaug has assured us that the Government would

19  be -- to the extent there are documents available, providing

20  them to us.  I would just like an order that they be

21  provided by the end of the week so we have time to prepare

22  for the hearing next week.

23          MR. ASPHAUG:  To the extent they're available,

24  they will be made available to the defense by the end of the

25  week, and we'll address a letter to the parties about what

1   is not available.

2            THE COURT:  Ms. Correll, anything?

3            MS. CORRELL:  No, Your Honor.

4            THE COURT:  In an unrelated matter, Mr. Wolf, did

5   the matter in Clackamas County resolve?

6            MR. WOLF:  It did not resolve, Your Honor;

7   however, it -- the Court did grant a continuance of

8   Mr. Rogers' trial.  A new date has not been selected.

9            THE COURT:  Okay.  But you don't know if it's

10  going to conflict with this scheduled trial date?

11           MR. WOLF:  It will not conflict with this

12  scheduled trial date.

13           THE COURT:  Okay.  That's all I needed to know.

14       Unless there's any other matters, we'll continue this,

15  I guess, until next week.

16  All right.  We'll be in recess

17                    (Hearing concluded.)

18

19

20

21

22

23

24

25

1                              C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA,          )
                                         )
4                          Plaintiff,    )  Case No. 3:12-CR-00431-HA
                                         )
5                  v.                    )
                                         )
6    DAVID JOSEPH PEDERSEN, a/k/a        )
     "JOEY" PEDERSEN, and HOLLY ANN      )
7    GRIGSBY,                            )
                                         )
8                          Defendants.   )
     _____)

9

10

11                          MOTION HEARING

12                         March 3, 2014

13          I certify, by signing below, that the foregoing is

14   a true and correct transcript of the record of proceedings

15   in the above-entitled cause.  A transcript without an

16   original signature, conformed signature, or digitally signed

17   signature is not certified.

18

19   /s/Jill L. Erwin, CSR, RMR, RDR, CRR
     _____
20
     Official Court Reporter            Date: March 10, 2014
21

22

23

24

25